FILED
2012 Jun-19  PM 01:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **EDDIE PALMER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:09-CV-350-VEH** |
| | ) | |
| **JOS. A. BANK CLOTHIERS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

## I.   Introduction

Plaintiff Eddie Palmer ("Mr. Palmer") initiated this employment discrimination

action arising under Title VII against Jos. A Bank Clothiers ("Jos. A. Bank") on

February 20, 2009. (Doc. 1). Pending before this court are the objections (Docs. 41,

42) filed by Mr. Palmer and Jos. A. Bank, respectively, on April 23, 2012, to the

report and recommendation (the "R & R") (Doc. 39) entered on March 8, 2012, which

recommends that Jos. A. Bank's Motion for Summary Judgment (Doc. 30) filed on

December 20, 2012, be granted in part and denied in part.[1]

Jos. A Bank filed a response (Doc. 43) to Mr. Palmer's objections on May 10,

---

[1]  The parties have not consented to the jurisdiction of the magistrate judge. Therefore, in accordance with 28 U.S.C. § 636(b), the magistrate judge entered a report and recommendation.

2012.  On May 30, 2012, this case was reassigned to the undersigned.  (Doc. 44).  The

matter is now under submission, and, for the reasons explained below, the R & R is

due to be accepted in part and rejected in part.

## II.    Standards

### A.    Summary Judgment

The Eleventh Circuit has summarized the summary judgment burden, including

when a defendant seeks judgment as a matter of law on the basis of an affirmative

defense, as follows.

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial."  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quotations and emphasis omitted).  If the movant bears the burden of proof on an issue, because, as a defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense.  *See Martin v. Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir.2003).

*International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1273-74 (11th

Cir. 2006).[2]

### B.    Review of Reports and Recommendations

After conducting a "careful and complete" review of the findings and

recommendations, a district judge may accept, reject, or modify the magistrate judge's

report and recommendation.  *See* 28 U.S.C. § 636(b)(1); *Williams v. Wainwright*, 681

F.2d 732 (11th Cir. 1982) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir.

1982)).[3]  The district judge may also receive further evidence or recommit the matter

to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1)(C).

A district judge "shall make a *de novo* determination of those portions of the

report or specified proposed findings or recommendations to which objection is

made."  28 U.S.C. § 636(b)(1)(C).  This requires that the district judge "give fresh

consideration to those issues to which specific objection has been made by a party."

*Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990) (citation omitted).

In contrast, those portions of the R & R to which no objection is made need only be

---

[2]  The "facts" are determined for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts'")(citation omitted).  Where the facts are in dispute, they are viewed in the manner most favorable to the plaintiff.  See *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 at 1115 (11th Cir. 1993).

[3]The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981, as well as all decisions issued after that date by a Unit B panel of the former Fifth Circuit.  *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir.1982); *see also United States v. Schultz*, 565 F.3d 1353, 1361 n. 4 (11th Cir.2009) (discussing the continuing validity of *Nettles*).

reviewed for clear error.  *Macort v. Prem, Inc.*, 208 Fed. App'x. 781, 784 (11th Cir. 2006).[4]

"Neither the Constitution nor the statute requires a district judge to review, *de novo*, findings and recommendations that the parties themselves accept as correct." *United States v. Woodard*, 387 F.3d 1329, 1334 (11th Cir. 2004) (citation omitted). It is incumbent upon the parties to timely raise any objections that they may have regarding a magistrate judge's findings contained in a report and recommendation, as the failure to do so subsequently waives or abandons the issue, even if such matter was presented at the magistrate judge level.  *See, e.g.*, *United States v. Pilati*, 627 F.3d 1360, 1365 (11th Cir. 2010) ("While Pilati raised the issue of not being convicted of a qualifying offense before the magistrate judge, he did not raise this issue in his appeal to the district court.  Thus, this argument has been waived or abandoned by his failure to raise it on appeal to the district court.").  However, the district judge has discretion to consider or to decline to consider arguments that were

---

[4] *Macort* dealt only with the standard of review to be applied to a magistrate's factual findings, but the Supreme Court has held that there is no reason for the district court to apply a different standard to a magistrate's legal conclusions. *Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). Thus, district courts in this circuit have routinely applied a clear-error standard to both. *See Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1373–74 (N.D. Ga. 2006) (collecting cases). This is to be contrasted with the standard of review on appeal, which distinguishes between the two. *See Monroe v. Thigpen*, 932 F.2d 1437, 1440 (11th Cir. 1991) (when a magistrate's findings of fact are adopted by the district court without objection, they are reviewed on appeal under a plain-error standard, but questions of law remain subject to *de novo* review).

not raised before the magistrate judge.  *Stephens v. Tolbert*, 471 F.3d 1173, 1176 (11th Cir. 2006); *see also Williams v. McNeil*, 557 F. 3d 1287, 1292 (11th Cir. 2009) (same).

"Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Nettles*, 677 F.2d at 410 n.8.  "This rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act." *Id*. at 410.  Indeed, a contrary rule "would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court." *Id*. (quoting *United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000)).

III.   Analysis

   A.   **Preliminary Considerations**

      1.   **Facts for Summary Judgment Purposes**

Neither side has raised any specific objections to the magistrate judge's recitation of the material facts set forth in the R & R.  As such, the undersigned adopts them (Doc. 39 at 3-11) for summary judgment purposes.

      2.   **Claims Still in Dispute**

Mr. Palmer's complaint asserts several different race discrimination and

retaliation claims.  The magistrate judge recommended that summary judgment be granted on Mr. Palmer's retaliatory constructive discharge claim, his claim of racial discrimination relating to vacation time, and his retaliation claim relating to his alleged discipline of being counseled.  The magistrate judge also proposed that summary judgment be denied with respect to Mr. Palmer's claims of a racially hostile working environment and constructive discharge based upon race.

In filing his objections, Mr. Palmer has clarified that he challenges the suggested rulings in the R & R "only to the extent summary judgment was granted as to his claim he was constructively discharged in retaliation for his complaints of discrimination." (Doc. 41 at 1).  Thus, Mr. Palmer consents to the entry of summary judgment on his vacation-based race discrimination and discipline-related retaliation claims.  (Doc. 41 at 1-2 n.1).

Jos. A. Bank, on the other hand, agrees with the magistrate judge's recommendation to grant summary judgment on retaliatory constructive discharge, but disagrees with the proposed denial of summary judgment on racial harassment and racial constructive discharge.  (Doc. 42 at 2).  Consistent with the standards enunciated above, the court now addresses the merits of these objections.

**B.      Mr. Palmer's Retaliatory Constructive Discharge Claim**

**1.      Constructive Discharge Generally**

"A constructive discharge occurs when a discriminatory employer imposes working conditions that are 'so intolerable that a reasonable person in [the employee's] position would have been compelled to resign.'" *Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d 974, 977 (11th Cir. 2003) (quoting *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997)). The threshold for establishing constructive discharge "is quite high" and the subjective feelings of the plaintiff are immaterial as the test is purely objective. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001).

Constructive discharge is sometimes characterized as a certain type of an adverse employment action that may *prima facially* support a discrimination or retaliation claim. *See, e.g., Rowell v. BellSouth Corp.*, 433 F.3d 794, 806-07 (11th Cir. 2005) ("Because Rowell was not faced with an impermissible take-it-or-leave-it choice between retirement or discharge, we find that <u>he cannot establish an adverse employment action of constructive discharge</u> and his ADEA claim fails.") (emphasis added). Additionally, a plaintiff may assert constructive discharge as part of either a Title VII race discrimination or retaliation claim. *See, e.g., Fitz*, 348 F.3d at 976 ("Fitz alleged that his resignation constituted a 'constructive discharge' because it

was compelled by Pugmire's intolerable, racially discriminatory conduct."); *Beltrami v. Special Counsel, Inc.*, 170 Fed. App'x 61, 62 (11th Cir. 2006) ("Louis J. Beltrami appeals an order of the district court granting summary judgment to Defendant Special Counsel, Inc. on Beltrami's claim that Special Counsel violated Title VII, by constructively discharging him in retaliation for filing a Title VII claim.") (citation omitted).

### 2.    *Burlington* Standard

The magistrate judge has recommended that summary judgment be granted as to Mr. Palmer's constructive discharge claim based upon retaliation, but denied with respect to the one related to race.   Here, Mr. Palmer's retaliatory constructive discharge theory is premised upon the series of complaints that he made about race discrimination and harassment by his store manager, Jim Davis ("Mr. Davis"), (*i.e.*, a written memo to Keith Brimberry ("Mr. Brimberry") on January 21, 2007; a verbal complaint to Bill Craley of the Human Resources Department in April 2007; and at least two subsequent verbal conversations with Mr. Brimberry about Mr. Davis's prejudicial treatment of him).

Because of the internal nature of Mr. Palmer's complaints, his Title VII retaliation claim is opposition-based rather than participation-based.  *See* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to

discriminate against any of his employees . . . because he has opposed any practice

made an unlawful employment practice by this subchapter, or because . . . .").

Subsequent to these complaints,[5] Mr. Palmer experienced trouble when trying to take

days off for vacation, had difficulty getting a third key holder to relieve him at the

store, was falsely accused of altering a document, which Mr. Davis had previously

insisted that Mr. Palmer fax to him, and was set up to be fired when Mr. Palmer

refused to sign a statement admitting that he had made the unauthorized changes to

the document.

The court rejects the magistrate judge's recommendation on retaliatory

constructive discharge because he applied the incorrect legal standard for retaliation

and this error in law confounded his analysis of the claim's triable nature.   In

*Burlington Northern and Santa Fe Ry. Co. v. White*, the Supreme Court of the United

States enlarged the reach of Title VII retaliation to include claims beyond those

premised upon adverse employment actions:

> We conclude that the antiretaliation provision does not confine
> the actions and harms it forbids to those that are related to employment
> or occur at the workplace.   We also conclude that the provision covers

---

[5]   These are examples of potential retaliatory acts  that are set forth factually in the R & R,
which occurred <u>after</u> Mr. Palmer first complained, on January 21, 2007, about race discrimination
by Mr. Davis.  There may be others, but the caliber of these are, from a collective standpoint (and
regardless of each act's strength as a basis for a separate and independent claim of retaliation),
sufficient to show a retaliatory animus on the part of Mr. Davis and to support a triable retaliatory
discharge theory under the *Burlington* material adversity standard.

those (and only those) employer actions that would have been <u>materially</u> <u>adverse to a reasonable employee</u> or job applicant. In the present context that means that the employer's actions must be <u>harmful to the</u> <u>point that they could well dissuade a reasonable worker from [opposing</u> <u>any practice made unlawful by Title VII]</u>.

*Id.*, 548 U.S. 53, 57, 126 S. Ct. 2405, 2409 (2006) (emphasis added).

As the Eleventh Circuit has expressly recognized, the standards governing discrimination and retaliation claims are considerably different post-*Burlington*. *See Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008) ("We therefore are persuaded that the adverse employment action standard previously applied in this circuit to Title VII retaliation claims is more stringent than the 'materially adverse' standard announced in *Burlington*."); *id.* ("We therefore conclude that not only was district court's ruling on Crawford's Title VII retaliation claim [premised upon an unfavorable performance review] wrong under our prior, narrower standard, but also that it most certainly is wrong under *Burlington*'s more liberal standard."). Accordingly, under Eleventh Circuit precedent, a plaintiff who meets the adverse employment action standard still applicable to Title VII discrimination claims necessarily satisfies the more relaxed post-*Burlington* retaliation standard.

The magistrate judge incorrectly limited Mr. Palmer's evidence of retaliatory evidence to that of constructive discharge (*i.e.*, the only adverse employment action) and then found that claim to be deficient due to a lack of temporal proximity.

However, this is not a situation in which the viability of Mr. Palmer's retaliation claim turns solely upon proof of a constructive discharge or other adverse employment action (due to the expanded definition of legally cognizable retaliation under *Burlington*), or merely upon temporal proximity (due to Mr. Palmer's series of complaints made about Mr. Davis's allegedly racially-motivated conduct).[6]

Therefore, consistent with *Burlington*, it should be for a jury to decide whether Mr. Davis's refusing to allow Mr. Palmer to take days off for vacation, being lax about getting a third key holder to relieve him at the store, and setting him up to be falsely accused of altering a document,[7] culminating in his alleged constructive discharge one day later, which occurred in November 2007, was in retaliation for the series of written and verbal Title VII-based complaints that Mr. Palmer made about Mr. Davis.

### 2.   Temporal Proximity

The court also finds that the magistrate judge's reliance upon *Clark County School Dist. v. Breeden*, 532 U.S. 268, 121 S. Ct. 1508 (2001) and similar cases to dismiss Mr. Palmer's retaliation claim for lack of causation is misplaced. In *Breeden*, the Supreme Court clarified that "[t]he cases that accept <u>mere</u> temporal proximity

---

[6]  *See* temporal proximity analysis immediately below.

[7]   These are examples of potential retaliatory acts that occurred <u>after</u> Mr. Palmer first complained, on January 21, 2007, about race discrimination by Mr. Davis.  There may be others.

between an employer's knowledge of protected activity and an adverse employment

action as sufficient evidence of causality to establish a *prima facie* case uniformly

hold that the temporal proximity must be 'very close,'" and rejected a two year elapse

of time (without more) as inadequate circumstantial evidence of causation. *Id.* at 273

(emphasis added) (citing *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th

Cir. 2001)).

Here, Mr. Palmer's proof supporting causation is not limited to one protected

activity, but rather a series of written and verbal complaints made about Mr. Davis.

Likewise, Mr. Palmer endured not just one retaliatory act, but instead a pattern of

retaliation as a result of his several statutorily protected expressions, including Mr.

Davis's disallowing him to take vacation, being lax about getting a third key holder

to relieve him at the store, and ultimately setting him up to be falsely accused of

altering a document.

Thus, unlike *Breeden*, because Mr. Palmer's causation element is not based

merely upon the elapse of time between a solitary act of opposing race discrimination

and a single act of retaliation, a totality of the circumstances approach (rather than a

strictly time-based method) is the more appropriate framework to utilize for

evaluating his retaliation claim.   As the Eleventh Circuit has cautioned, "[w]e

construe the causal link element broadly so that 'a plaintiff merely has to prove that

the protected activity and the negative employment action are not completely unrelated.'" *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1278 (11th Cir. 2008) (quoting *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)); *cf. Chapter 7 Trustee v. Gate Gourmet, Inc.*, ___ F.3d ___, No. 11-11819, 2012 WL 2072671, at *11 (11th Cir. June 11, 2012) (analyzing causal link element in a Title VII participation-based retaliation claim as a "sequence of events" which "create[d] a reasonable inference that the statutorily protected filing of and refusal to settle the EEOC charge caused Gate Gourmet to deny Williams a light-duty position, which is a materially adverse action.").

Additionally, reading the record in a light most favorable to Mr. Palmer, a reasonable jury could conclude that the elapse of time between his first complaint in January 2007, and the difficulties that Plaintiff subsequently encountered with Mr. Davis was indeed "very close" in the *Breeden* sense.   In sum, the court rejects the R & R on Mr. Palmer's retaliatory constructive discharge claim and finds, to the contrary, that it should be tried before a jury.

**C.     Mr. Palmer's Racial Harassment and Racial Constructive Discharge Claims**

The court accepts the R & R's evaluation of Mr. Palmer's racial harassment and racial constructive discharge claims and overrules Jos. A. Bank's objections. Jos.

A. Bank's critique of the R & R with respect to racial harassment amounts to an unavailing attack on the weight of the evidence in favor of Mr. Palmer.  However, "[i]n ruling on a Rule 56 motion, the district court may not weigh the evidence or find facts.  Instead, the court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party." *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986)).

Additionally, regarding constructive discharge based upon race, as the magistrate judge has indicated in the R & R, "[a]lthough perhaps a close call, the evidence presented, viewed in the light most favorable to plaintiff, is sufficient to avoid summary judgment [on constructive discharge]."  (Doc. 39 at 19).  Having reviewed the record *de novo*, the undersigned agrees with the magistrate judge's assessment and concludes that Mr. Palmer has adduced sufficient evidence to have both his racial harassment and racial constructive discharge claims tried to a jury.

## IV.   Conclusion

Therefore, the R & R is **HEREBY REJECTED** as it pertains to the magistrate judge's recommendation to grant summary judgment on Mr. Palmer's retaliatory constructive discharge claim, but is otherwise **HEREBY ADOPTED**.  Accordingly,

Jos. A. Bank's Motion for Summary Judgment is **GRANTED** only on Mr. Palmer's vacation-based race discrimination and discipline-related retaliation claims and, as a result, those claims are **HEREBY DISMISSED WITH PREJUDICE**.  In all other respects, Jos. A. Bank's Motion for Summary Judgment is **DENIED**.  By separate order, the court will set this case for a final pretrial conference.

       **DONE** and **ORDERED** this the 19th day of June, 2012.

                                    **VIRGINIA EMERSON HOPKINS**
                                    United States District Judge